# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

| | |
|---|---|
| ARIEL CASANUEVA, On behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) )    0:18-cv-61411 |
| v. | ) ) ) |
| FLORIDA HOME IMPROVEMENT ASSOCIATES, INC., | ) ) ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

NOW COMES the Plaintiff, ARIEL CASANUEVA, by and through his attorneys, SMITHMARCO, P.C., suing on behalf of himself and all other similarly situated, and for his complaint against the Defendant, FLORIDA HOME IMPROVEMENT ASSOCIATES, INC., Plaintiff states as follows:

### I. PRELIMINARY STATEMENT

1.  This is an action for actual and statutory damages for violations of the Fair Credit Reporting Act (hereinafter "FCRA"), 15 U.S.C. §1681 et seq.

### II. JURISDICTION & VENUE

2.  Jurisdiction arises under the FCRA 15 U.S.C. §1681 et seq. and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3.  Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

### III. PARTIES

4.  ARIEL CASANUEVA, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Pembroke Pines, County of Broward, State of Florida.

5. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1681a(c).

6. FLORIDA HOME IMPROVEMENT ASSOCIATES, INC. is a business entity headquartered in Ft. Lauderdale, Florida. Defendant's principal place of business is located in Fort Lauderdale, Florida. Defendant is incorporated in the State of Florida.

7. At all relevant times Defendant was a "person" as that term is defined by 15 U.S.C. §1681a(b).

### IV.  ALLEGATIONS

8. In or around December 2017, Plaintiff was given a flier by a representative of Defendant while walking down a street in Miami, Florida.

9. After reviewing the flier, Plaintiff learned that Defendant was providing free estimates for window and roof replacement.

10. In need of window replacement, Plaintiff gave Defendant his name and phone number, and Defendant told Plaintiff that someone from Defendant would contact Plaintiff to schedule an appointment for the free estimate.

11. Approximately three days later, Defendant called Plaintiff to schedule the appointment for Defendant to provide a free estimate for window replacement.

12. Plaintiff provided his name and address, and an appointment was scheduled for the mutually agreeable date and time of December 16, 2017 at 9:00 a.m.

13. At no point during any of Plaintiff's communications with Defendant was the topic of financing discussed, and there was no discussion as to how any services would be paid for by Plaintiff. Defendant was simply to come to Plaintiff's home and provide an estimate of the cost to replace the windows.

14. December 16, 2017 came and went, and Defendant never came to Plaintiff's house to provide its estimate of the cost to replace the windows.

15. On or about December 21, 2017, Plaintiff obtained a copy of his credit report from Trans Union and discovered that, on December 13, 2017, Defendant had obtained a copy of Plaintiff's credit report.

16. On or about April 11, 2018, Plaintiff obtained an updated copy of his credit report from Trans Union and discovered that Defendant had again obtained a copy of his credit report on February 15, 2018.

17. At no time on or prior to February 15, 2018 did Plaintiff have a personal credit account with Defendant.

18. At no time on or prior to February 15, 2018 did Plaintiff owe a debt to Defendant.

19. At no time on or prior to February 15, 2018 did Plaintiff have a personal business relationship with Defendant.

20. Given the facts delineated above, prior to February 15, 2018, Defendant had no information in its possession to suggest that Plaintiff owed a debt to Defendant.

21. Given the facts delineated above, prior to February 15, 2018, Defendant had no information in its possession to suggest that Plaintiff was responsible to pay a debt to Defendant.

22. On or about December 13, 2017, and again on or about February 15, 2018, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit file from one or more "consumer reporting agency", as that term is defined by 15 U.S.C. §1681a(f).

23. At no time on or prior to February 15, 2018 did Plaintiff consent to Defendant accessing his individual and personal credit report .

24. On or about December 13, 2017, and again on or about February 15, 2018, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit report without a legitimate business reason to do so.

25. On or about December 13, 2017, and again on or about February 15, 2018, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit report impermissibly.

26. On or about December 13, 2017, and again on or about February 15, 2018, despite being cognizant of the facts as delineated above, Defendant accessed Plaintiff's individual and personal credit report without first informing Plaintiff of its intent to do so.

27. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's private information.

28. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained information relative to Plaintiff's personal and individual credit accounts.

29. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained information relative to Plaintiff's payment history on his individual credit accounts.

30. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained information relative to Plaintiff's credit history and credit worthiness.

31. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Plaintiff's private financial information was published to Defendant.

32. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, unknown employees, representative and/or agents of Defendant viewed Plaintiff's private financial information.

33. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Defendant impermissibly obtained personal information about Plaintiff, such as his current and past addresses; date of birth; employment history; and, telephone numbers.

34. On or about December 13, 2017, and again on or about February 15, 2018, at the time Defendant accessed Plaintiff's individual and personal credit report, Plaintiff's personal information, as delineated above, was published to Defendant.

35. Defendant's conduct, as delineated above, is a violation of 15 U.S.C. §1681b.

36. As a result of Defendant's conduct, as delineated above, Plaintiff has suffered actual damages in the form of dignitary harm arising from the Defendant's review of his personal information and his credit information. Furthermore, Plaintiff will continue to suffer the same harm for an indefinite time in the future, all to Plaintiff's great detriment and loss.

## V. CLASS ALLEGATIONS

37. Plaintiff brings this action individually and on behalf of a class of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.

38. The aforementioned class of individuals is defined as all persons about whom, during the two (2) year period prior to the filing of this Complaint, Defendant obtained a

consumer report after obtaining information about consumers under the guise of scheduling an appointment to provide an estimate for window and/or roof replacement.

39. The class is so numerous that joinder of all members is impractical. Upon information and belief, Defendant has accessed hundreds, possibly thousands, of consumer reports under the guise of scheduling an appointment to provide a free estimate for roof and/or window replacement.

40. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal question at issue is whether Defendant violated the FCRA by accessing Class members' consumer reports without a permissible purpose during the applicable time period as alleged.

41. Plaintiff's claim is typical of the claims for the Class, which arise from the same operative facts and are predicated on the same legal theories.

42. There are no individual questions of fact, other than whether a Class member authorized a review of his or his consumer report, which can be determined by a ministerial inspection of Defendant's records.

43. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously prosecuting this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor counsel for Plaintiff have any interests that might cause them to not vigorously pursue this claim.

44. This action should be maintained as a class action as the prosecution of separate actions by individual members of the Class would create a substantial risk of inconsistent or varying adjudications with respect to individual Class members. Such a result would establish incompatible standards of conduct for the parties opposing the Class. Furthermore, the

prosecution of separate actions could result in adjudications of individual members' claims that could be dispositive of the interests of other members not parties to the adjudications or could substantially impair and/or impede the ability of such individuals to protect their interests.

45.     A class action is a superior method for the fair and efficient adjudication of this controversy.  The identities of individual Class members may be easily obtained from Defendant's records.

## V.    JURY DEMAND

46.     Plaintiff hereby demands a trial by jury on all issues so triable.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, ARIEL CASANUEVA, by and through his attorneys, respectfully prays for order be entered certifying the proposed class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Class; that judgment be entered for Plaintiff and the Class against Defendant for statutory and punitive damages for violation of 15 U.S.C. §1681b, pursuant to 15 U.S.C. § 1681n; that judgment be entered for Plaintiff and the class against Defendant for actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o; that the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and that the Court grant such other and further relief as may be just and proper.

> Respectfully submitted,
> **ARIEL CASANUEVA**
>
> By:     s/ David M. Marco
>         Attorney for Plaintiff

Dated: June 22, 2018

David M. Marco
IL Bar No. 6273315/FL Bar No. 125266
SMITHMARCO, P.C.
55 W. Monroe Street, Suite 1200
Chicago, IL 60603
Telephone:	(312) 546-6539
Facsimile:	(888) 418-1277
E-Mail:	dmarco@smithmarco.com